PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LISA SHIVELY, *etc.*, *et al.*, ) | |
| ) | CASE NO. 5:11CV2398 |
| Plaintiffs, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| GREEN LOCAL SCHOOL DISTRICT ) | |
| BOARD OF EDUCATION, *et al.*, ) | **MEMORANDUM OF OPINION** |
| ) | **AND ORDER** |
| Defendants. ) | [Resolving ECF No. 18] |

Pending is Defendants' Motion for Judgment on the Pleadings and for Dismissal for Lack of Subject-Matter Jurisdiction (ECF No. 18). Defendants move the Court for an order granting them judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Furthermore, Defendants move the Court for dismissal of Plaintiffs Lisa and James Shively's claims for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). The Court has been advised, having reviewed the record, the parties' briefs and the applicable law. For the reasons that follow, the Court grants the motion in part.

**I.**

Plaintiffs Lisa and James Shively filed this action under 42 U.S.C. § 1983 in November 2011 on their own behalf, and on behalf of their minor child, T.S. The eight-count Amended Complaint (ECF No. 14) seeks declaratory, injunctive, and monetary relief against the Green Local School District Board of Education (also "Board of Education" or "Defendant Board"), Michael Nutter, Wade Lucas, Cindy Brown, Mark Booth, Jeff Miller, and Jeff Wells (also

(5:11CV2398)

collectively "individual Defendants") for alleged violations of Plaintiffs' civil rights. Specifically, Plaintiffs allege Defendant Board and its employees failed to prevent or respond to gender- and religion-based bullying and harassment aimed at T.S., thereby violating Plaintiffs' constitutional rights, Title IX, and state law. Count I alleges a deprivation of Plaintiffs' substantive due process rights under the Fourteenth Amendment. Count II alleges a deprivation of Plaintiffs' equal protection rights under the Fourteenth Amendment. Count III is a First Amendment claim wherein Plaintiffs allege that T.S. was punished for exercising her right to identify herself as Jewish, a right Defendants failed to enforce. Count IV alleges that Defendants, by allowing religion-based bullying and harassment, violated T.S.'s right to the free exercise of her religion under the First Amendment. Count V alleges a claim under Title IX of the Civil Rights Act of 1972, 20 U.S.C. § 1681 *et seq.* Count VI alleges that Defendant Board's failure to train its employees regarding bullying constitutes a violation of the Board's obligations, resulting in liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Count VII alleges a negligence state law claim against the individual Defendants. Finally, Count VIII alleges a state law claim of malicious purpose, bad faith, and wanton and reckless conduct against the individual Defendants.[1]

Plaintiffs allege that the bullying, both physical, verbal and electronic, went on for years:

---

[1] In their Notice of Supplemental Authority (ECF No. 37) Plaintiffs call the Court's attention to *Zeno v. Pine Plains Cent. School Dist.*, 702 F.3d 655 (2012). In *Zeno*, the plaintiff filed an action alleging that the defendant school district violated Title VI of the Civil Rights Act of 1964 ("Title VI") by being deliberately indifferent to harassment by his fellow high school students for three and one-half years. Title VI prohibits, *inter alia*, discrimination on the basis of race, color, or national origin. 42 U.S.C. § 2000d. Plaintiffs do not, however, allege that Defendants violated Title VI.

2

(5:11CV2398)

Specific examples of the bullying and harassment aimed at T.S. include the following:

a) Students regularly said she would "rot in Hell" because she did not believe in Jesus Christ; she was regularly called a "dirty Jew" or "Hitler;"

b) Several times she was knocked into lockers while walking through the hallways of school;

c) She was tripped, shoved, hit, kicked, had her books knocked out of her hands on a regular basis;

d) In September, 2007, T.S. was stabbed in the leg with a pencil during class; T.S. had to be transported to an urgent-care center, where the tip of the pencil was removed from her leg with a scalpel;

e) In April, 2008, Mrs. Shively informed defendant Wade Lucas, then the superintendent of schools, that she would keep T.S. out of school until the bullying situation was addressed; Mrs. Shively kept T.S. out of school for one week, but eventually brought her back to school when nothing was done to address the situation;

f) In September and October, 2008, T.S. was verbally harassed on a daily basis, called "a fucking Jew" by several boys as she got on the bus; the bus driver never disciplined the boys or filed any sort of report to the school district;

g) On October 14, 2008, two boys spat on T.S. on the bus.

h) In November, 2009, T.S. was assaulted by a boy in the choir room at school, causing T.S. to have to be taken to the hospital and to wear crutches for several weeks. After the incident, the boy who assaulted T.S. and others continued to verbally harass and threaten T.S., telling her they would break her crutch over her head;

i) In October, 2010, several students created a Facebook page, entitled, "If you think T.S. is a whore and needs to go back to 8th grade, join!" The mother of one of the girls who created the page posted comments on the page;

j) In January, 2011, two students at Green High School created a "kill list" which included T.S.'s name as a target for being killed or hurt. While school officials assured Mrs. Shively that the perpetrators would never be able to set foot in the

(5:11CV2398)

    high school again, one of the perpetrators was seen by T.S. in the cafeteria just
    three weeks after the incident;

    k)  On August 24, 2011, the first day of the current school year, T.S. was helping
    with a "Club Fair," a program meant to showcase the various clubs students can
    join, when students began shouting "Jew" at her from across the cafeteria;

    l)  On September 20, 2011, a female student approached T.S. in the cafeteria in
    front of other students and called T.S. a "whore," among other names;

    m)  On September 30, 2011, T.S. endured an entire day of teasing and harassment
    from students between and during class.  T.S. came home in tears.

ECF No. 14 at ¶ 13.

Noting that school officials responded to the asserted bullying, Plaintiffs indicate that two alleged perpetrators were supposedly expelled and that Defendants Board and Nutter ultimately offered an alternative public school placement to T.S.  ECF No. 14 at ¶¶ 13j, 24.

## II.  Standards of Review

A motion for judgment on the pleadings under Rule 12(c) is reviewed under the same standard applicable to a motion to dismiss under Rule 12(b)(6).  *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).  The Court must construe the complaint in the light most favorable to the non-moving party, accept all factual allegations as true, and make reasonable inferences in favor of the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008); *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997).  The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  A motion brought pursuant to Rule 12(c) is appropriately granted "when no material issue of fact exists and

(5:11CV2398)

the party making the motion is entitled to judgment as a matter of law." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 582 (6th Cir. 2007) (internal citation and quotation marks omitted).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiffs are not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557 (brackets omitted).

Defendants' motion is also brought pursuant to Fed. R. Civ. P. 12(b)(1) for a lack of jurisdiction. Rule 12(b)(1) permits dismissal for "lack of subject-matter jurisdiction." Lack of

5

(5:11CV2398)

subject-matter jurisdiction may be asserted at any time, either in a pleading or in a motion. *See* Fed. R. Civ. P. 12(b)(1). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). A party making a "factual attack" on subject-matter jurisdiction challenges the actual existence of the court's jurisdiction, *i.e.*, a defect may exist even though the complaint contains the formal allegations necessary to invoke jurisdiction. *See RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

Defendants launch a factual attack in that they challenge "whether Plaintiff Parents, who allege their child was teased, have standing to bring bullying claims on their own behalf." ECF No. 18 at 3. Because this is a question of fact, the Amended Complaint is not accorded the presumption of truth on these matters by the Court.

### III.  Discussion

**A. Plaintiff Parents Lack Standing to Bring All Indirect § 1983 Claims and a Title IX Claim on Their Own Behalf**

The Amended Complaint avers "the actions and omissions of the defendants also deprived her parents of the right to educate their daughter [T.S.] as they saw fit. . . ." ECF No. 14 at ¶ 23. In other words, the incidents that happened to their daughter deprived Plaintiffs Lisa and James Shively (also "Plaintiff Parents")[2] independently of their right to participate in T.S.'s

---

[2] Lisa Shively and her husband, James Shively, are both named as plaintiffs in the
(continued...)

6

(5:11CV2398)

education by choosing their child's school, in violation of their own rights. Aside from this allegation, all asserted claims are indirect results of the purported bullying T.S. experienced.

Defendants argue that Plaintiff Parents have no standing to assert indirect constitutional claims on their own behalf; accordingly, this Court lacks subject-matter jurisdiction and must dismiss these claims. ECF No. 18 at 17-19. Plaintiffs concede this issue by not disputing it in their Response (ECF No. 22). *Ctr. for Biological Diversity v. Rural Utils. Serv.*, 2009 WL 3241607, at *3 (E.D. Ky. Oct. 2, 2009) ("When a party fails to respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived, and grant the motion.") (citing *Humphrey v. U.S. Attorney General's Office*, 279 Fed. Appx. 328, 331 (6th Cir. 2008)). The Court holds that Plaintiff Parents lack standing to bring indirect constitutional claims on their own behalf, as claims asserted under § 1983 are cognizable only for the party whose own civil rights have been directly injured. *Jaco v. Bloechle*, 739 F.2d 239, 242 (6th Cir. 1984). Accordingly, all constitutional claims averring indirect injury to Plaintiff Parents are dismissed

Plaintiff Parents' claims under Title IX are also dismissed for lack of standing. Only direct beneficiaries of programs covered by Title IX can bring claims under that statute. *Phillips v. Anderson County Bd. of Educ.*, 259 Fed. Appx 842, 843 n.1 (6th Cir. 2008) (parent lacks standing to assert Title IX claim on behalf of his daughter); *Mohat v. Mentor Exempted Village*

---

²(...continued)
Amended Complaint (ECF No. 14). Mr. Shively died during the pendency of the case at bar. *See* ECF No. 19. The Court substituted the Estate of James R. Shively, Lisa A. Shively, Executrix, as Plaintiff in the case. ECF No. 31. For convenience, the Court refers to Mrs. Shively and the Estate of James R. Shively as Plaintiff Parents.

7

(5:11CV2398)

*School Dist. Bd. of Educ.*, No. 1:09CV0688, 2011 WL 2174671, at *9 (N.D. Ohio June 1, 2011 ) (Nugent, J.) ("Plaintiffs agree that Eric's parents cannot bring a claim under Title IX, as alleged in Count Three. This claim, therefore, is also dismissed.").³

Plaintiff Parents' direct claim for deprivation of their right to educate their daughter when T.S. transferred to another public school remains pending at this time.

**B. Count I - Substantive Due Process Claim**

The Due Process Clause of the Fourteenth Amendment protects an individual's life, liberty, and property against government actions. *Daniels v. Williams*, 474 U.S. 327, 331 (1986). Generally, substantive due process does not impose a constitutional duty on a school to protect students from harm inflicted by private actors, such as their classmates. *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). However, there are two exceptions: 1) where a state or local government agency takes a person into custody and restrains their liberty, such that it renders the person unable to care for herself, *id.* at 199-200; and 2) the "state-created danger" exception when the state takes an affirmative act to increase the risk of harm to its citizens, *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). The first

---

³ During the telephonic status conference conducted on August 1, 2012, the Court was informed that, prior to filing the motion at issue, Defense counsel sent a detailed letter to Plaintiffs' counsel Kenneth D. Myers identifying the weaknesses of the Amended Complaint. Attorney Myers responded. Despite that communication, as required by the Court's Case Management Plan, Plaintiff Parents' claims under Title IX remained in the Amended Complaint (ECF No. 14) making it necessary for Defendants to formally move for dismissal and the Court to rule. *See* Case Management Plan (ECF No. 8) at ¶ 14. The Court expects that such costly inaction will not be repeated.

(5:11CV2398)

exception does not apply here, but Plaintiffs argue the "state-created danger" exception does apply.

In order to succeed on a claim under the "state-created danger" exception, Plaintiffs must show:

> (1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; (2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and (3) the state knew or should have known that its actions specifically endangered the plaintiff.

Jones v. Reynolds, 438 F.3d 685, 690 (6th Cir. 2006) (quoting Cartwright v. City of Marine City, 336 F.3d 487, 493 (6th Cir. 2003)); Mohat, 2011 WL 2174671, at *7. With regard to the state's knowledge of specific danger, the Sixth Circuit has established this element relates to the standard of deliberate indifference. McQueen v. Beecher Cmty. Sch., 433 F.3d 460, 469 (6th Cir. 2006). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

Defendants argue that the Court should dismiss Count I because Plaintiffs allege no facts suggesting a "state-created danger." The Court, however, finds that Plaintiffs have pleaded facts in the Amended Complaint (ECF No. 14) that credibly support a "state-created danger" claim, that is, Plaintiffs assert Defendants and other school district employees turned a blind eye to T.S. and her parents. In that sense, Defendants allegedly made conscious choices and took the

9

(5:11CV2398)

affirmative steps to disregard Plaintiffs' complaints and to permit the gender- and religion-based bullying in violation of T.S.'s substantive due process rights.

**C. Count II - Equal Protection Claim**

Plaintiffs allege that T.S. was deprived of an equal educational opportunity as a result of student-on-student religion-based bullying and harassment known to Defendants, in violation of the Fourteenth Amendment. *See, e.g.*, ECF No. 14 at ¶¶ 30-31. In response to the within motion, Plaintiffs argue that they have properly pleaded an equal protection claim.

To succeed on the theory of liability alleged in Count II, Plaintiffs must show that a state actor intentionally discriminated because of T.S.'s membership in a protected class. *McCleskey v. Kemp*, 481 U.S. 279 (1987); *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990). Alternatively, Plaintiffs must show that school officials were deliberately indifferent to the allegations of student-on-student religion-based bullying and harassment.[4] *See Williams v. Port Huron School Dist.*, 455 Fed. Appx. 612, 618 (2012) (citing *Gant ex rel. Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 139-40 (2d Cir. 1999)). Courts have repeatedly held that teachers, administrators, and boards of education can be held liable under the Fourteenth Amendment if they have been deliberately indifferent to discriminatory harassment of a student at school by other children. *See Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629 (1999). "Deliberate

---

[4] The "deliberate indifference" standard for use in these cases is "substantially the same" as the deliberate indifference standard applied by the Sixth Circuit to Title IX cases. *Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 369 (6th Cir. 2005).

10

(5:11CV2398)

indifference to discrimination can be shown from a defendant's actions or inaction in light of known circumstances." Gant, 195 F.3d at 141.

"[A] plaintiff may demonstrate defendant's deliberate indifference to discrimination 'only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances.'" Vance v. Spencer Cnty. Pub. Sch. Dist., 231 F.3d 253, 260 (6th Cir. 2000) (quoting Davis, 526 U.S. at 648). These claims do not require proof that "the defendant fully appreciated the harmful consequences of that discrimination, because deliberate indifference is not the same as action (or inaction) taken maliciously or sadistically for the very purpose of causing harm." Gant, 195 F.3d at 141 (citation and quotation marks omitted).

The Court finds that Plaintiffs have stated a plausible claim under the Equal Protection Clause by alleging that Defendants assured Mrs. Shively in January 2011 that the perpetrators who created the "kill list," which included T.S.'s name, would never be able to set foot in the high school again; but one of the perpetrators was seen by T.S. in the cafeteria just three weeks after the incident. ECF No. 14 at ¶ 13j. Plaintiffs point out that this would allow for the inference that the students were not expelled or disciplined in any meaningful way.

Plaintiffs also argue that Defendant Board and Michael Nutter did not respond appropriately to the bullying by offering T.S. the opportunity to attend school elsewhere. They allege that:

> Despite the defendants knowing that T.S. had withdrawn from school because of the pervasive bullying and due to the school district's failure to address it, and despite knowing that T.S. was out of school and being asked by Lisa Shively to find an alternative placement for T.S., the school district defendant and defendant Nutter took three weeks to place T.S. in a suitable alternative public school, while

11

(5:11CV2398)

> providing only two hours per day of tutoring for part of that three-week period, thus depriving T.S. of her educational opportunities for that period of time.

ECF No. 14 at ¶ 24. According to Plaintiffs, T.S. had to withdraw from the Green Local School District in October 2011 because of the daily, day-long harassment which was driving her to depression. T.S. spent three weeks out of school, with minimal tutoring, before Defendants found another school for her to attend.

**D. Count III - First Amendment Claim**

Count III alleges a First Amendment claim wherein Plaintiffs aver that T.S. was punished for exercising her right to identify herself as Jewish, a right Defendants failed to enforce. Plaintiffs allege that Defendants' failure to protect T.S. from her classmates' taunts "constitute[s] a violation of plaintiff's constitutional rights pursuant to the First Amendment to the U.S. Constitution." "The actions of all defendants, in failing to enforce plaintiff's right to be secure and to be left [ ] alone while in school and to be free from verbal and physical assaults based on a core identifying characteristic such as religion" is what constitutes the alleged violation of plaintiff's First Amendment rights. ECF No. 14 at ¶ 33.

The Court agrees with Defendants that Plaintiffs Response (ECF No. 22 at 12-15) conflates Counts III and IV. Count III is dismissed due to its inchoate, conclusory nature.

**E. Count IV - Free Exercise of Religion Claim**

Count IV alleges that Defendants, by allowing religion-based bullying and harassment, violated T.S.'s right to the free exercise of her religion under the First Amendment. This cause of action concludes that Plaintiffs' free exercise rights were violated when Defendants failed to

12

(5:11CV2398)

protect T.S. from third-party actors. ECF No. 14 at ¶ 36. Plaintiffs argue that T.S. has the right to be left alone regarding her religion. Moreover, she has the right not to be punished or put at some disadvantage for being Jewish.

Count IV is also dismissed. While the events described in the Amended Complaint are disturbing on many levels, the Amended Complaint (ECF No. 14) presents no facts suggesting that Defendants compromised Plaintiffs' ability to practice religion. *Olojo v. Kennedy-King College*, No. 05 C 6234, 2006 WL 1648441, *6 (N.D. Ill. June 7, 2006) (complaint dismissed because plaintiff failed to allege sufficient facts showing that her professor interfered with her ability to practice religion). There are no facially plausible allegations stating a claim for deprivation of free exercise rights. *See e.g.*, *Burnett v. Hall*, No. 3:11-0279, 2011 WL 4436515, at *3 (M.D. Tenn. Sept. 22, 2011) (magistrate judge's report and recommendation finding plaintiff's assertions fall far short of stating a violation of the Free Exercise Clause), *approved and adopted*, 2011 WL 5102446 (M.D. Tenn. Oct 27, 2011).

Moreover, Plaintiffs cite extensively to *Harper v. Poway Unified Sch. Dist.*, 445 F.3d 1166 (9th Cir. 2006), *cert. granted and vacated as moot*, 549 U.S. 1262 (2007), for its "persuasive value" in support of their First Amendment claims. ECF No. 22 at 13. But, as its cite reveals, that opinion of a panel of the United States Court of Appeals for the Ninth Circuit was vacated as moot. The decision therefore has no precedential value because the Supreme Court vacated it. *See Mitchell v. City of Sapulpa*, 857 F.2d 713, 718 n. 1 (10th Cir. 1988).

13

(5:11CV2398)

## F. Count V - Title IX Claim

Title IX of the Civil Rights Act provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In *Davis, supra,* the Supreme Court established that Title IX may support a claim for student-on-student sexual harassment when the plaintiff can demonstrate the following elements:

> (1) that the sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school, (2) that the funding recipient had actual knowledge of the sexual harassment, and (3) that the funding recipient was deliberately indifferent to the harassment.

*Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) (citing *Davis*, 526 U.S. at 633-43). The Court finds that Plaintiffs have set forth factual allegations in the Amended Complaint plausibly supporting a gender discrimination claim under Title IX. *See, e.g.*, ECF No. 14 at ¶¶ 11, 13i, 13l, 39-40.

It is undisputed that Title IX does not, however, support a claim for student-on-student harassment based upon religion. The prong of Count V that promotes such a claim is, therefore, dismissed.

## G. Count VI - *Monell* Claim

Count VI is brought against Defendant Board only. Plaintiffs seek to hold Defendant Board responsible for violating Plaintiffs' rights under the First and Fourteenth Amendments by allowing and tacitly approving religion-based bullying through actions and inactions that amount

14

(5:11CV2398)

to customs, practices and policies. They allege that Defendant Board's failure to train its employees "in proper methods of recognizing, responding to and preventing bullying and harassment, and in permitting bullying and harassment, constitute[s] a violation of defendant Green Local School District Board of Education's obligations to maintain lawful policies and procedures." ECF No. 14 at ¶ 42. Defendants argue that Count VI must be dismissed because Plaintiffs fail to aver the requisite elements to hold Defendant Board responsible based on policy, custom or practice.

In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court constrained municipal liability to occasions when local government bodies took actions "under color of some official policy" that resulted in the violation of a constitutional right. *Id.* at 692; *see also Doe v. Claiborne County, Tenn. By and Through Claiborne County Bd. of Educ.*, 103 F.3d 495, 508 (6th Cir. 1996) ("In addition to showing that the School Board as an entity 'caused' the constitutional violation, plaintiff must also show a direct causal link between the custom and the constitutional deprivation. . . ."). In order to hold a Board liable, a plaintiff must allege the following: (1) that the plaintiff has suffered a deprivation of a constitutional right; and (2) the Board is responsible for the violation because of an official policy or custom. *Doe*, 103 F.3d at 505-506 (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). So long as "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question," municipal liability can attach. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).

(5:11CV2398)

For the reasons set forth above, the Court finds that Plaintiffs have stated causes of action in Counts I and II for deprivation of a constitutional right. As to the second prong of a *Monell* claim, stating municipal liability based on a policy of inaction is possible only if plaintiffs show: "(1) a clear and persistent pattern of violating a constitutional right; (2) notice or constructive notice to the School Board; (3) the Board's tacit approval of the unconstitutional conduct amounting to an official policy of inaction; and, (4) that the Board's custom was the 'moving force' or a direct causal link in the constitutional deprivation." *Mohat v. Mentor Exempted Village School Dist. Bd. of Educ.*, No. 1:09CV0688, 2011 WL 2174671, at *8 (N.D. Ohio June 1, 2011 ) (citing *Doe*, 103 F.3d at 508). Plaintiffs allege that Defendant Board had constructive knowledge *via* the principals and superintendents, *see* ECF No. 14 at ¶ 15, and turned a blind eye toward the incidents brought to its attention by Plaintiffs, *Doe v. Big Walnut Local Sch. Dist. Bd. of Educ.*, 837 F. Supp.2d 742, 755 (S.D. Ohio 2011). Plaintiffs argue that "[b]y tacitly approving bullying and not enforcing its anti-bullying policies, the board, pursuant to the 'inaction theory,' actually created a policy tacitly approving bullying, thus violating plaintiffs' rights." ECF No. 22 at 17. The Court finds that Plaintiffs' *Monell* claim for violations of the Fourteenth Amendment satisfies the *Iqbal* plausibility standards.

Nevertheless, Plaintiffs concede that if any of their claims set forth in Counts I through IV fails on the merits at this stage, then no corresponding *Monell* claim can survive. ECF No. 22 at 16 ("Obviously, if any of these claims fail on their merits at this stage, then no corresponding Monell claim can survive."). As discussed above, Counts III and IV are dismissed for the reasons

16

(5:11CV2398)

stated. Accordingly, the prong of Count VI alleging a *Monell* claim for violation of the First Amendment is also dismissed.

**H. Claims Against the Individual Defendants in Their Official Capacities**

To the extent Plaintiffs assert federal and state claims against the individual Defendants in their official capacities, these are claims against Defendant Board. These claims against the individual defendants are dismissed as redundant. *Baar v. Jefferson Cnty. Bd. of Educ.*, 476 Fed. Appx. 621, 635 (6th Cir. 2012); *Y.S. v. Bd. of Educ. of Mathews Local Sch. Dist.*, 766 F. Supp.2d 839, 842 (N.D. Ohio 2011) (school board, which was also a party to the action, would be held liable for any actions taken by superintendent in his official capacity).

**I. Qualified Immunity**

Defendants' motion raises the defense of qualified immunity to Plaintiffs' § 1983 claims. The qualified immunity inquiry asks two distinct questions: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008). In this case, there is no dispute that the rights at issue were clearly established at the time of the alleged violations.

Accepting as true all well-pleaded facts and all reasonable inferences drawn therefrom alleged by Plaintiffs, the Court finds Defendants Nutter, Lucas, Brown, Booth, Miller, and Wells are not entitled to qualified immunity as to the remaining constitutional claims at this stage in the litigation. The individual Defendants are not barred from asserting this defense to Counts I and II at a later stage in the proceedings.

17

(5:11CV2398)

## J. Counts VII and VIII - Negligence Claim and Statutory Immunity

Count VII alleges a negligence and/or gross negligence claim under state law against the individual Defendants. Count VIII alleges a state law claim of malicious purpose, bad faith, and wanton and reckless conduct against the individual Defendants. The essential elements for a negligence claim consist of duty, breach of duty, and damage or injury that is proximately caused by the breach. *Titus v. Dayton Bd. of Educ.*, No. 17920, 2000 WL 84649, at *2 (Ohio App. 2d Dist. Jan. 28, 2000) (citing *Moncol v. Bd. of Ed. of N. Royalton School Dist.*, 55 Ohio St.2d 72, 75 (1978)). The failure of any of these elements will defeat the action. Plaintiffs argue the individual Defendants had a duty to T.S., the same as to the general public, of reasonable care. They breached that duty by failing to take reasonable steps to curtail the bullying. The foreseeable result was injury, both physical and emotional, to T.S., and her eventually having to withdraw from the Green schools. *Aratari v. Leetonia Exempt Village School Dist.*, No. 06 CO 11, 2007 WL 969402, at *5 (Ohio App. 7th Dist. March 26, 2007).

The individual Defendants claim statutory immunity under Ohio Rev. Code § 2744.03(A)(6). When determining whether a school employee is immune, § 2744.03(A)(6) governs, and states "the employee is immune from liability unless one of the following applies: (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code." Section (a) is not applicable to the case at bar. Section (c) is also not applicable because the Revised Code does not expressly

(5:11CV2398)

impose liability on the individual Defendants. Therefore, the individual Defendants are immune unless their acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner in accordance with section (b).

Plaintiffs allege the individual Defendants acted wantonly and/or recklessly. ECF No. 14 at ¶ 48. They argue that the individual Defendants failed to exercise any care whatsoever in dealing with T.S., over and over again, over a period of time. They were not only wanton in failing to properly address the bullying, but by doing so, they increased the likelihood that she would be harmed and/or would have to withdraw from school. *Vaughan v. City of Shaker Heights*, No. 1:10CV0609, 2011 WL 5966808, at *11 (N.D. Ohio Aug. 30, 2011) (White, M.J.), *approved and adopted*, 2011 WL 5966732 (N.D. Ohio Nov. 28, 2011) (Wells, J.). "Distilled to its essence, and in the context of R.C. 2744.03(A)(6)(b), recklessness is a perverse disregard of a known risk. Recklessness, therefore, necessarily requires something more than mere negligence. In fact, the actor must be conscious that his conduct will in all probability result in injury." *O'Toole v. Denihan*, 118 Ohio St.3d 374, 386 (2008) (internal citations and quotation marks omitted).

"Although the determination of recklessness is typically within the province of the jury, the standard for showing recklessness is high, so summary judgment can be appropriate in those instances where the individual's conduct does not demonstrate a disposition to perversity." *Id.* at 387; *Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 356 (1994) (issues regarding malice, bad faith, and wanton or reckless behavior are generally questions presented to the jury).

(5:11CV2398)

Defendants Nutter, Lucas, Brown, Booth, Miller, and Wells can argue this defense to Plaintiffs' negligence claim at a later stage of the proceedings.

**K. John Does 1-10**

The Court dismisses without prejudice Plaintiffs' allegations against John Does 1-10 as service of process, and, by extension the institution of a lawsuit, cannot be effected on fictitious persons. *Webster v. Freedom Debt Relief, LLC*, No. 1:10CV1587, 2011 WL 3422872, at *2 (N.D. Ohio Aug. 4, 2011).

### IV. Conclusion

Defendants' Motion for Judgment on the Pleadings and for Dismissal for Lack of Subject-Matter Jurisdiction (ECF No. 18) is granted in part.

All constitutional claims averring indirect injury to Plaintiff Parents, as well as Plaintiff Parents' claims under Title IX, are dismissed. In addition, Counts III and IV, the prong of Count V alleging student-on-student harassment based upon religion, and the prong of Count VI alleging a *Monell* claim for violation of the First Amendment, are dismissed. The Court also dismisses the claims against Defendants Michael Nutter, Wade Lucas, Cindy Brown, Mark Booth, Jeff Miller, and Jeff Wells in their official capacities. Finally, Plaintiffs' allegations against John Does 1-10 are dismissed without prejudice. All other claims remain pending.

IT IS SO ORDERED.

| | |
|---|---|
| February 28, 2013 | /s/ Benita Y. Pearson |
| Date | Benita Y. Pearson |
| | United States District Judge |